## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARK ANTHONY TOYER** | ) | |
| | ) | |
| **Movant/Defendant,** | ) | |
| | ) | |
| v. | ) | **CV. NO. 1:08-CV-8046-VEH-JEO** |
| | ) | **CR. NO. 1:06-CR-361-VEH-JEO** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

---

## MEMORANDUM OPINION

Mark Anthony Toyer (hereinafter the "Toyer" or the "defendant") initiated the present action by filing a pro se motion to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. §2255. (Civ. Doc.[1] 1[2]). Pursuant to an order to show cause, the United States filed a response in opposition to the motion. (Civ. Doc. 5). Upon consideration of the defendant's arguments and the United States' response thereto, the Court finds that the § 2255 motion is due to be denied.

## I. BACKGROUND

---

[1] References to "Civ. Doc(s).___" are to the documents as numbered by the clerk of court in the court's record of the § 2255 civil case, 2:08-cv-8046-VEH-JEO.

[2] Civil Doc. 1 includes the following: (1) an 8-page § 2255 motion form, which the court will hereinafter refer to as the "§ 2255 Motion" or the "§ 2255 Mot."; (2) a 42-page typed memorandum brief explicating Toyer's § 2255 claims, which the court will refer to as the "§ 2255 Brief"; and (3) an "Exhibit List" with 14 associated documentary exhibits, which shall be cited herein as "Ex. ___," with the numbers corresponding to those on Toyer's "Exhibit List."

The defendant was indicted on two counts of violating of 18 U.S.C. § 922(g)(1). (Crim. Doc.[3] 1). Count One charged that Toyer, a previously convicted felon, unlawfully possessed two firearms, while Count Two charged that he unlawfully possessed ammunition. (*Id.*) The defendant pleaded not guilty, and prior to trial, he moved to suppress evidence of two weapons and the ammunition, as well as incriminating custodial statements Toyer made to police. (Crim. Doc. 16). A magistrate judge held a hearing on the motion to suppress and thereafter entered a report and recommendation (hereinafter "R&R") to deny the motion in its entirety. (Crim. Doc. 25). Specifically, the magistrate judge credited testimony and other evidence before him showing that Toyer had voluntarily consented to the search of the automobile that yielded the ammunition; that the search of the residence yielding the weapons was conducted pursuant to a valid search warrant; and that the defendant's incriminating statements were made after he had been made aware of, and voluntarily waived, his *Miranda*[4] rights. (*Id.*) Toyer did not object to the magistrate judge's R&R, which the undersigned district judge adopted and approved in denying the motion to suppress. (Crim. Docs. 28, 29). At trial, Toyer renewed his motion to suppress as it related to the search of the residence, but the court denied such motion

---

[3] References to "Crim. Doc(s).___" are to the documents as numbered by the clerk of the court in the court's record of the defendant's criminal case, 2:06-cr-361-VEH-JEO.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

on the grounds (1) that Toyer lacked "standing" to contest the search, (2) that he had failed to object to the magistrate judge's report and recommendation, and (3) that the search warrant was valid.  (Trial Vol. II at 4-26).  Ultimately, the jury found the defendant guilty on both counts of the indictment.  (Crim. Docs. 45, 46).  On May 18, 2007, the court entered a final judgment sentencing the defendant to 235 months imprisonment.  (Crim. Doc. 60).

On direct appeal, the defendant raised four issues: (1) whether the district court erred in holding that Toyer's statements did not violate *Miranda* and were admissible; (2) whether it was error to admit evidence of small quantities of drugs and of drug paraphernalia; (3) whether it was error to admit evidence that the defendant had previously fired a weapon at another person; and (4) ineffective assistance of his trial counsel.  (*See* Crim. Doc. 78); *United States v. Toyer* [No. 07-12347], 274 Fed. Appx. 844 (11th Cir. April 23, 2008) (unpublished).  The Eleventh Circuit Court of Appeals, however, affirmed the conviction and sentence, rejecting Toyer's first three claims on the merits and dismissing the ineffective assistance of counsel claims without prejudice to allow them to be further developed and asserted in a § 2255 proceeding. (*Id.*)

Toyer timely filed his instant § 2255 motion on November 12, 2008.[5]  (Civ.

---

[5]Toyer's § 2255 motion was actually docketed by the clerk of this court on November 14, 2008, but the court deems it filed two days earlier, the date it is signed.  *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 1999).

Doc. 1; Crim. Doc. 80).  In that motion and in the memorandum brief attached thereto, Toyer raises numerous issues, although many of his arguments overlap.  He raises a host of claims alleging ineffective assistance of counsel.  These assert various deficiencies of his appointed counsel, both at trial and on appeal, relating broadly to their failure to secure the suppression of evidence, the investigation of the case, the calling and examining of witnesses, and the raising of claims on appeal.  Toyer also seeks to assert independent, substantive claims based upon alleged violations of his Fourth, Fifth, and Sixth Amendment rights, as well as the insufficiency of the evidence to support the ammunition count.

The United States filed its Response to the § 2255 Motion, in which the government asserts that all of Toyer's claims are procedurally defaulted, without merit, or both.  (Civil Doc. 5 ("Response")).  Toyer has filed a traverse in support of his motion.  (Civil Doc. 12 ("Traverse" or "Trav.")).  Therein, he raises a new argument that this court lacked subject matter jurisdiction to try and convict him.  (Trav. at 1-2, 4).

## II. DISCUSSION

### A.    The Jurisdictional Claim

In his traverse, the defendant argues for the first time that this court lacked jurisdiction to try him.  Because this claim effectively argues that his conviction is

void, *see United States v. Peter*, 310 F.3d 709, 715 (11th Cir. 2002), the court will address it first.  Toyer seems to maintain that the court lacked jurisdiction on the theory that, because the searches and seizures by which the evidence used against him were carried out by state, rather than federal, law enforcement officials, the United States "lacks the requisite standing to argue the merits of the state[-]seized evidence." (Trav. at 1).  He also says, citing *Younger v. Harris*, 401 U.S. 37 (1971), that "because the conduct arose under the laws of the State of Alabama, and no judgment ever entered on the allegation--to proceed in federal court simultaneously with the State[']s case on the same aspects, voids there (sic) very conviction and sentence ...." (Trav. at 2).

Section 2255 authorizes a federal prisoner to assert a claim alleging that the court was without jurisdiction to impose his sentence.  28 U.S.C. § 2255(a). However, this claim, as stated by Toyer, is nonsense.  To the extent that Toyer complains that evidence was collected by state law enforcement officials, it is well established that such evidence may be admissible in a federal prosecution so long as the state officials did not violate the Fourth Amendment in obtaining the evidence. *See, e.g., United States v. De La Rosa*, 922 F.2d 675, 677-79 (11th Cir. 1991); *United States v. Kitowski*, 729 F.2d 1418, 1421-22 (11th Cir. 1984); *see also generally Elkins v. United States*, 364 U.S. 206 (1960); *United States v. Janis*, 428 U.S. 433 (1976).

5

Moreover, the use of such evidence in a federal prosecution implicates only the question of evidentiary admissibility (albeit with a constitutional dimension), not subject matter jurisdiction. *See United States v. Olivares-Rangel*, 458 F.3d 1104, 1110 (10th Cir. 2006) ("[I]llegal police activity affects only the admissibility of evidence; it does not affect the jurisdiction of the trial court or otherwise serve as a basis for dismissing the prosecution."). Federal district courts have original jurisdiction over all offenses against the laws of the United States. 28 U.S.C. § 3231; *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008); *United States v. Peter*, 310 F.3d 709, 713 (11th Cir. 2002). Toyer was convicted of two counts alleging violations of 18 U.S.C. § 922(g)(1), which makes it unlawful under federal law for a felon "to ... possess in or affecting commerce, any firearm or ammunition." Such is a facially valid federal criminal statute. *See United States v. Scott*, 263 F.3d 1270, 1273-74 (11th Cir. 2001); *United States v. McAllister*, 77 F.3d 387, 389-90 (11th Cir. 1996). Further, Toyer stipulated that the firearms and ammunition in his case had traveled in interstate commerce. (Doc. 70, "Trial Vol. I", at 93; Doc. 71, "Trial Vol. II," at 27). As such, this court had jurisdiction. And finally, contrary to Toyer's suggestion, this court's authority is unaffected by whether the State of Alabama ever prosecuted him using the evidence about which he complains. Indeed, because the United States and the State of Alabama are separate sovereigns, either

one or both could, in any order, prosecute Toyer for criminal offenses based on the same underlying conduct and evidence without violating the Constitution. *See Bartkus v. Illinois*, 359 U.S. 121, 139 (1959); *Abbate v. United States*, 359 U.S. 187, 194-96 (1959).

### B.    The Ineffective-Assistance-of-Counsel Claims

Toyer raises a host of claims alleging that his appointed counsel, both at trial and on direct appeal, provided ineffective assistance, in violation of the Sixth Amendment.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or . . . sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires  showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must satisfy two requirements to prevail on an ineffective assistance of counsel claim. He must show that

> (1) 'counsel's representation fell below an objective standard of reasonableness,' *Strickland*, 466 U.S. at 688, and that (2) 'there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' *id*. at 694. In this circuit, we have referred to the latter element as the 'prejudice' prong and the former element as the 'performance' prong.

*Reece v. United States*, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997). When considering such claims, a court need not address both components because a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel. *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000); *see also Reece*, 119 F.3d at 1464 n.4.

In examining the first prong under *Strickland*, the Eleventh Circuit has articulated the relevant considerations as follows:

The standard for counsel's performance is reasonableness under prevailing professional norms. The purpose of ineffectiveness review is not to grade counsel's performance. . . . To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled. . . . The petitioner must establish that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance.

Courts must indulge [the] *strong presumption* that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment. Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy. Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one. . . . [B]ecause counsel's conduct is

8

presumed reasonable, for a petitioner to show that the conduct was unreasonable, a *petitioner must establish that no competent counsel would have taken the action that his counsel did take*. . . .

In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time. [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Johnson v. Alabama*, 256 F.3d 1156, 1176-77 (11th Cir. 2001) (quoting *Chandler v. United States*, 218 F.3d 1305, 1313-16 (11th Cir. 2000) (en banc) (citations and internal quotation marks from *Chandler* omitted in *Johnson*) (emphasis added)).

With regard to the second prong under *Strickland*, it is not enough to show that an error had some conceivable effect on the outcome of the proceeding. *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002). The defendant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,'" *i.e.*, "'a probability sufficient to undermine confidence in the outcome.'" *McClain v. Hall*, 552 F.3d 1245, 1251 (11th Cir. 2008) (quoting *Strickland*, 466 U.S. at 694). In the context of an ineffective assistance on appeal claim, in order to determine prejudice, a court must review the merits of an omitted claim. *Philmore v. McNeil*, 575 F.3d 1251 (11th Cir. 2009); *Heath v. Jones*, 941 F.2d 1126, 1132 (11th Cir. 1991). Counsel's performance

9

will be deemed prejudicial only if the neglected claim would have a "reasonable probability of success on appeal." *Heath*, 941 F.2d at 1132. The court now turns to address the defendant's various ineffective assistance of counsel claims.

### 1. Alleged Deficiencies of Trial Counsel Related to Admission of Custodial Statements under *Miranda*

Prior to trial, Toyer's counsel moved to suppress certain evidence, including custodial statements Toyer made to police. Specifically, Toyer argued that the alleged statements had been obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), because he had been in custody and he allegedly was not advised of, nor had he knowingly and voluntarily waived, his Fifth Amendment right to remain silent or his Sixth Amendment right to counsel. Toyer's motion to suppress was ultimately denied, however, including as it related to his statements to police. Toyer now argues that his trial attorney's performance in connection with his failure to have the statements suppressed constituted ineffective assistance. Toyer's claims in this regard, however, are without merit, as explained below.[6]

Toyer's motion to suppress was referred to a magistrate judge, who held an

---

[6]In addition to his ineffective assistance claims related to his counsel's alleged deficiencies in failing to secure suppression of his custodial statements, Toyer also appears to be attempting to raise a freestanding *Miranda* claim. (§ 2255 Brief at 2-6). However, this court rejected Toyer's *Miranda* claim at trial and the Eleventh Circuit did likewise on direct review. *See Toyer*, 274 Fed.Appx. at 845-47. District courts are not required in § 2255 proceedings to reconsider claims of error that were raised and disposed of on direct appeal. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). Therefore, this court will not consider the *Miranda* issues Toyer now raises except insofar as they relate to his claims that his counsel was constitutionally ineffective.

evidentiary hearing.  (*See* Doc. 23, Suppression Hearing Transcript Volume I

("Suppr. Hrg. Vol. I"); Doc. 75, Suppression Hearing Transcript Volume II ("Suppr.

Hrg. Vol. II")).   At the suppression hearing, the only witness to testify for the

prosecution was Agent James Wigley, an investigator in the Calhoun/Cleburn

Counties District Attorney's office working on the Calhoun County Drug Task Force.

(Suppr. Hrg. Vol. I at 9-41).   His testimony supports the existence of the following

circumstances:   In November 2005, Wigley became involved in an investigation

concerning Toyer.  (Supp. Hrg. Vol. I at 9).   Said investigation led police to seek and

obtain a warrant to search a house located at 613 West 21st Street in Anniston,

Alabama (hereinafter the "21st Street Residence"), which police understood to be

Toyer's residence.  (*Id.* at 9-10).   Because of Toyer's history of violence, which

included convictions for manslaughter and assault and because of information

indicating that numerous weapons were being stored on the premises, police

concocted a "ruse" designed to lure Toyer to a remote location in order to ensure that

he would not be present at the residence when the search warrant was executed.

(Supp. Hrg. Vol. I at 13).   Wigley had previously used Toyer as a cooperating

confidential informant (hereinafter "CI") with the county Drug Task Force.  (*Id.*)  So

as other law enforcement officials were preparing to execute the search warrant at the

21st Street Residence, Wigley called Toyer's cell phone and directed him to meet

Wigley in the parking lot of a certain local church, under the guise of arranging for

Toyer to conduct a controlled buy of narcotics from a third party.  (*Id.*)  Toyer arrived

at the church parking lot driving a black automobile.  (*Id.*)  An agent at the scene

asked Toyer if he had any weapons or money or drugs in his vehicle.  (*Id.* at 14).

Toyer responded that he did not, held up his hands to allow the agent to search his

person, and Toyer opened the trunk of the vehicle.  (Supp. Hrg. Vol. I at 14, 30).

When the agent searched the trunk, he found some .380 caliber ammunition and an

empty box for .357 ammunition.  (*Id.* at 14).  A search of the vehicle interior further

yielded a shotgun shell found in the glove compartment.  (*Id.* at 14-15).  Wigley

contacted other agents and informed them that Toyer was present with them so they

could execute the search warrant.  (*Id.* at 15).  Once Wigley received word that those

agents had safely entered the premises, he advised Toyer that police had obtained a

search warrant for his residence, and Wigley placed him in handcuffs.  (*Id.*)  Wigley

put Toyer in Wigley's vehicle, where he was joined by Wigley and Drug Enforcement

Administration group supervisor Matt Germanowski.  (Supp. Hrg. Vol. I at 15).

Wigley then advised Toyer of his *Miranda* rights, namely that he had a right to

remain silent, that he had a right to an attorney, that if he could not afford an attorney,

the court would appoint him one, that he had a right to speak to an attorney before

making any statements or answering any questions, that he could stop at any time, and

that anything he said could be used against him in a court of law.  (*Id.* at 15-16).
Wigley asked Toyer if he understood his rights, and Toyer replied, "Yes, sir." (*Id.* at
16-17).  Thereafter, Toyer began to ask Wigley questions about the search warrant
and what was going on.  (*Id.* at 17).  Wigley told Toyer that they were executing a
warrant for the 21st Street Residence, and Toyer confirmed that he lived at that house,
in the front bedroom, with his girlfriend and son.  (*Id.* at 17-18).  Toyer also told
Wigley that there would be a silver semiautomatic .380 caliber pistol "with an orange
plug in the back of it," inside the residence.  (Supp. Hrg. Vol. I at 18).  Toyer
explained that another person, Darrell James, had brought the firearm over several
days prior and left it and that he, Toyer, had moved it to different locations in the
house.  (*Id.*)  Police ultimately recovered from the residence a .380 caliber pistol
matching the description given by Toyer, as was a .357 magnum revolver.  (*Id.* at 19).
Upon being told of the discovery of the latter, Toyer said to Wigley that he had
purchased it, which he called "the big brown gun," from an individual about four days
earlier for $25 and that he had shot it, but that he thought he had gotten rid of it, that
he didn't believe it was still in the house.  (*Id.* at 21-24).

The sole witness to testify in support of Toyer's motion to suppress was Toyer
himself. (Supp. Hrg. Vol. II at 5-30).  Toyer's version of events sharply contradicted
Wigley's and was as follows: Toyer expressly denied ever living or staying at the 21st

Street Residence, although he acknowledged that Tiesha Sterling, who Toyer referred to as his "ex-wife," lived there with their son. (*Id.* at 5-6). He claimed, rather, that he had lived at all relevant times with his mother, a sister, a brother, and a nephew at a house at 1702 Dooley Avenue in Anniston (the "Dooley Avenue Residence"). (*Id.* at 5). He related that on the day that the search warrant was executed, he met Wigley at the parking lot with the understanding that he, Toyer, was going to perform a controlled drug buy for Wigley, as he had done previously. (*Id.* at 6-7). Toyer denied that he had allowed the agents to search him in the manner described by Wigley in his testimony, and he denied opening the trunk to his vehicle to allow it to be searched. (*Id.* at 14). Toyer testified, rather, that after arriving, agents pointed "stun-guns" at his head and forced him to get on the ground, he was put in handcuffs, and the agents began asking him where he lived. (Supp. Hrg. Vol. II at 7-8, 15-16). He testified that he consistently told the police that he lived at the Dooley Avenue Residence and that he told them that never told them that he stayed at the 21st Street Residence. (*Id.* at 8, 10). Toyer said that he was put in Wigley's vehicle, and they took him to the 21st Street Residence. (*Id.* at 9). He denied that he was told he had the right to remain silent or that he had the right to a lawyer or that he was given any other *Miranda* warnings. (*Id.* at 11, 20). Toyer said further denied having any knowledge of firearms being present at the 21st Street Residence or that he had made any statements

14

to the police concerning the presence of firearms at those premises. (*Id.* at 11, 25-27).

Following the hearing, the magistrate judge entered a report and recommendation finding that Toyer's motion was due to be denied, including as it related to the statements to police. (Crim. Doc. 25). In so doing, the magistrate judge found that Wigley's testimony that he advised Toyer of his *Miranda* rights and indicating that Toyer had "implicitly waived" them to be more credible than Toyer's version of events. (*Id.* at 9-11). Toyer did not object to the R&R to deny the motion to suppress, which the undersigned district judge thereafter adopted and approved. (Crim. Docs. 28, 29). On appeal, Toyer argued that this court had erred in denying his *Miranda* claim, but the Eleventh Circuit rejected that claim on the merits. *Toyer*, 274 Fed. Appx. at 845-47.

### a.  Failure to Call Agent Germanowski and "Every Relevant Witnesses" to his *Miranda* Claim

Toyer argues in his § 2255 motion that his trial counsel's performance as it relates to the admission of the statements was constitutionally deficient on several grounds, including that his counsel "should have ... subpoena[ed] every relevant witness to the suppression hearing, including, but not limited to Agent Matthew Germanowski." (§ 2255 Brief at 6). However, the "mere fact that other witnesses might have been available or that other testimony might have been elicited from those

who testified is not a sufficient ground to prove ineffectiveness of counsel." *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (en banc). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." (*Id.* at 1512). "The burden is on the defendant to allege and establish facts showing counsel's failure to call witnesses rendered his trial fundamentally unfair." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980)[7]. "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative. *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006); *Washington v. Watkins*, 655 F.2d 1346, 1363-64 (5th Cir. Sept. 14, 1981); *Guerra*, 628 F.2d at 413; *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). Court view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's

---

[7]The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

testimony is from the defendant." *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (citing *Guerra*, 628 F.2d at 413); *accord Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988) (holding that petitioner failed to demonstrate prejudice required on ineffective assistance claim where he failed to proffer any evidence suggesting that witness would have testified favorably had his attorney questioned him).  Rather, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).

Agent Germanowski was a Drug Task Force supervisor present in Wigley's vehicle when Wigley says that he read Toyer his *Miranda* rights, when Toyer waived such rights, and when Toyer thereafter made at least many, if not all, of the statements he moved to suppress.  It was entirely reasonable for Toyer's counsel not to call Germanowski to testify at the suppression hearing.  Toyer offers no reason why his counsel should have suspected that Germanowski, a law enforcement officer, might be inclined to give any testimony favorable to the accused, rather than simply corroborate Wigley's testimony.  Moreover, Toyer cannot show prejudice.  Germanowski was later called as witness at trial by the prosecution.  While Toyer

17

urges that Germanowski's account of the events differs from Wigley's (*see* § 2255 Brief at 5), the record simply does not bear that assertion out, at least not to any material degree.  Rather, Germanowski clearly confirmed the essential elements of Wigley's testimony, including that Wigley advised Toyer of his *Miranda* rights, that Toyer indicated he understood them, and that Toyer thereafter voluntarily made incriminating statements to Wigley.  (Trial Vol. I at 97-103).

To the extent that this claim is based upon an alleged failure of counsel to call other "relevant" witnesses to support his *Miranda* claim, Toyer has failed to identify who they might have been, what testimony they might have given, or why counsel was supposedly unprofessional in failing to call them.[8]  As such, Toyer has not shown that his counsel was constitutionally ineffective or that prejudice resulted.  These claims are due to be denied.

### b. Failure to Object to the Magistrate Judge's Report and Recommendation to Deny the *Miranda* Claim

Toyer also argues that his trial counsel was ineffective because he did not object to the magistrate judge's R&R. (§ 2255 Brief at 35-36).  Toyer argues that had

---

[8]Toyer has argued that his counsel was ineffective for failing to call members of Toyer's family to testify at the suppression hearing.  (§ 2255 Brief at 31-32).  However, Toyer has not explained, and the court fails to see, how their testimony could have any bearing whatsoever specifically on Toyer's *Miranda* claim, which deals solely with the admissibility of his custodial statements.  Toyer has not suggested that members of Toyer's family were present in Agent Wigley's vehicle when Toyer was found to have been advised of, and voluntarily waived, his rights to remain silent and to counsel, nor that they were present when Toyer was found to have made the incriminating statements used against him.  As such, the failure of Toyer's counsel to call family members at the suppression hearing does not implicate a claim of ineffective assistance relative to the *Miranda* issue, so it will be addressed elsewhere.

his trial counsel objected to the R&R, it would have allowed the district judge "to understand both sides of this case" and would have "clarified ... facts" underlying his *Miranda* claim. (*Id.* at 35). "More importantly," Toyer says, "an objection would have ... preserved the issues for proper appellate review under the proper standard." (*Id.*)

It was not objectively unreasonable for Toyer's trial counsel not to object to the R&R. Toyer has entirely failed to show that an objection to the R&R had any reasonable chance of success. Toyer's *Miranda* claim hinged upon witness credibility determinations, which the magistrate judge made adverse to Toyer after taking live testimony. Even if a party objects to a magistrate judge's R&R, such witness credibility determinations made by the magistrate judge must generally be accepted by the district judge absent a new evidentiary hearing, something to which an objecting party is not entitled, or unless there is "'an articulable basis for rejecting the magistrate's original resolution of credibility.'" *Amlong v. Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1250 (11th Cir. 2007) (quoting *United States v. Marshall*, 609 F.2d 152, 155 (5th Cir. 1980)); *see also United States v. Raddatz*, 447 U.S. 667, 674 (1980); *United States v. Farias-Gonzalez*, 556 F.3d 1181, 1184 n.1 (11th Cir. 2009). There is simply nothing in the record that would support that objecting to the R&R would have changed the outcome of his motion to suppress the

19

statements or the outcome of his trial, so he cannot show prejudice in the trial court.

Nor would an objection to the magistrate's R&R have made any difference on appeal.   Whether or not a defendant objects to a magistrate judge's report and recommendations on a motion to suppress, the Eleventh Circuit reviews associated legal conclusions under the same de novo standard.   *Toyer*, 274 Fed. Appx. at 845 (citing *United States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982) (per curiam)). Where no objection is made to an R&R the Eleventh Circuit reviews factual findings only "for plain error or manifest injustice."   (*Id.*)   But even where a defendant does object to an R&R, the underlying factual findings adopted by a district judge are still subject to appellate review only for "clear error."   *United States v. Heard*, 367 F.3d 1275, 1277 (11th Cir. 2004).   "A finding of fact is clearly erroneous only when [the appellate court is] left with a definite and firm conviction that a mistake has been committed."   *United States v. Hogan*, 986 F.2d 1364, 1372 (11th Cir. 1993) (internal quotation marks and citation omitted).   Accordingly, "clear error" review is still "a deferential one."   (*Id.*)   Toyer's motion to suppress as it pertained to his *Miranda* claim hinged entirely upon the credibility determinations made by the magistrate judge based upon live witness testimony.   The standard the Eleventh Circuit articulated in Toyer's appeal regarding such determinations, *i.e.*, that such choices will be respected "unless [the magistrate judge's] understanding of the facts appears

to be unbelievable," *Toyer*, 274 Fed.Appx. at 845, was quoted from *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002), a case where the court of appeals applied a "clearly erroneous" standard that was not limited by a failure to object to an R&R.  Thus, the Eleventh Circuit actually applied the same standard to the magistrate judge's credibility determination that it would have had Toyer objected to the R&R.  Ultimately, the Eleventh Circuit recognized that the magistrate judge had determined "that Toyer implicitly waived his Miranda rights by giving statements to the police after being advised of those rights," and that court ruled that the "factual findings underlying this conclusion are supported by the record," based upon Wigley's testimony.  *Toyer*, 274 Fed.Appx. at 846.  Thus, Toyer's *Miranda* claim was due to fail on appeal regardless of whether the findings of the magistrate judge were subject to "clear error," rather than "plain error," review.

Based on the foregoing, Toyer's ineffective assistance claim based on his counsel's failure to object to the magistrate judge's R&R fails under *Strickland*.  *See United States v. Goodrich*, 2007 WL 1412393, *7 (M.D. Ala. May 11, 2007); *United States v. Gasser*, 941 F.2d 1212 (table), 1991 WL 162168, *2 (7th Cir. Aug. 23, 1991).  "A lawyer cannot be deficient for failing to raise a meritless claim." *Freeman v. Attorney Gen. of the State of Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (citing *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001)).  By the same token, where

21

an underlying substantive claim lacks merit, any deficiencies of counsel in failing to raise or adequately pursue cannot give rise to prejudice. *See Owen v. Secretary for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992). This claim is due to be rejected.

### 2.   Alleged Deficiencies of Trial Counsel Related to Admission of the Weapons

Toyer similarly contends that his trial counsel was constitutionally ineffective in connection with his inability to secure the suppression of the two firearms that Toyer was charged with unlawfully possessing. The police recovered these weapons from the 21st Street Residence pursuant to a search warrant. Toyer argues that his counsel's performance was deficient in that he allegedly failed to do the following:

(1)   to argue that the search warrant was not supported by probable cause on the theory that supporting affidavit did not show (a) the reliability, veracity, or basis of knowledge of the CI's or (b) a connection between Toyer and the 21st Street Residence (§ 2255 Brief at 10-12, 23-30);

(2)   to pursue disclosure of the identity of the CI's that provided the information for the warrant application; (§ 2255 Brief at 23, 27, 28);

(3)   to move for a *Franks*[9] hearing to attack the warrant even if facially valid (§ 2255 Brief at 23, 25);

(4)   to call as witnesses at the suppression hearing Harry Dodson of

---

[9]*Franks v. Delaware*, 438 U.S. 154 (1978).

the Calhoun County Drug Task Force, the affiant on the search warrant application (*id.* at 30); and Toyer's mother, brother, sister, and wife (*id.* at 31-35); and

(5)    to properly investigate the case so as to be able to impeach Wigley's suppression hearing testimony that a motor vehicle title in Toyer's name was recovered in the search of the 21st Street Residence (§ 2255 Brief at 10-12, 30-31).

None of these claims afford any basis for relief, as explained below.

### a.    Toyer Lacked Fourth Amendment "Standing" to Object to the Search of the 21st Street Residence

All of Toyer's ineffective assistance claims related to the suppression of the weapons fail at the threshold because, even if Toyer's counsel had done everything that Toyer says he should, Toyer, by his own testimony, lacks a personal expectation of privacy the 21st Street Residence as required to raise a constitutional challenge to the search that yielded the weapons.  "The Fourth Amendment's prohibition against unreasonable searches and seizures 'protects an individual in those places where [he] can demonstrate a reasonable expectation of privacy against government intrusion,' and 'only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search.'"  *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (quoting *United States v. Cooper*, 203 F.3d 1279, 1283-84 (11th Cir.2000)).  "The accused bears the burden of demonstrating a legitimate expectation of privacy in the area searched." *United States v. Harris*, 526

23

F.3d 1334, 1338 (11th Cir. 2008) (citing *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998)).  Where a defendant disclaims any personal interest in a searched premises or area where contraband was recovered, the defendant lacks a sufficient privacy interest to have standing to assert a Fourth Amendment violation. *See United States v. Sweeting*, 933 F.2d 962, 964 (11th Cir. 1991); *United States v. Hawkins*, 681 F.2d 1343, 1345-46 (11th Cir. 1982); *United States v. Molina-Garcia*, 634 F.2d 217, 218 (5th Cir. Jan. 1981); *Lovette v. United States*, 230 F.2d 263, 263 (5th Cir. 1956); *see also United States v. Salvucci*, 448 U.S. 83 (1980) (abolishing the doctrine of "automatic standing" by which a defendant charged with unlawful possession of contraband was formerly deemed to have Fourth Amendment standing to challenge any search that yielded the contraband).

Toyer has consistently maintained in his testimony, both at the suppression hearing and at trial, and in his instant § 2255 motion that he has never lived or stayed at, nor even entered the interior of, the 21st Street Residence.  Rather, Toyer says that his only connection with the premises was that his wife and minor son lived there and that he, Toyer, would pick up his son outside the house at times.  Such circumstances clearly do not afford Toyer personally with any legitimate expectation of privacy in the premises as required to object to the search.  *See Sweeting*, 933 F.2d at 964 (defendants lacked standing to object to search of residence where they claimed to

live at their mother's house located elsewhere).[10]   The magistrate judge recognized

as much at the suppression hearing (Suppr. Hrg. Vol. II at 33-34), as did this court in

denying Toyer's renewed motion to suppress at trial.  (Trial Vol. II at 26).  Because

he lacked standing to object to the search, all of his claims asserting that his lawyer

should have done more to contest the legality of the search are due to be denied.  *See*

*James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *Sharp v. United States*, 2009 WL

2870510, *16 (S.D. Ala. Sept. 3, 2009) (unpublished).  Even so, all of Toyer's

ineffective assistance claims pertaining to the admission of the weapons also fail for

additional reasons, as discussed below.

### b.    Failure to "Attack" the Search Warrant Affidavit as Unsupported by Probable Cause

Toyer laments that his counsel failed to "attack" the search warrant on the

ground that the affidavit offered in support of its application did not show probable

cause, as required under the Fourth Amendment.  (§ 2255 Memo. at 23).  As the court

understands this claim, Toyer makes two challenges to the facial validity of the

---

[10]Toyer complains that his counsel was deficient because, Toyer asserts, "standing should, and could, have been argued on the basis that [Toyer's] son lived at the 21st Street Residence." (§ 2255 Brief at 35).  It is evident that Toyer does not appreciate either (1) the showing required in order to be able to object to a search under the Fourth Amendment or (2) the difficult legal position his counsel was in with respect to any objection to the search of the 21st Street Residence.  The fact that Toyer's wife and son or other relatives lived there simply does not afford Toyer a *personal* expectation of privacy in regard to the premises as required to allow Toyer to object to the search.  *See United States v. Hunt*, 505 F.2d 931, 939 (5th Cir. 1974) ("[I]nterpersonal relationships cannot make a 'victim' of one who is not otherwise one against whom the search or seizure is directed." (internal quotation marks and citation omitted)); *see also, e.g., Sweeting, supra*. Thus, the dilemma for Toyer's counsel was that any attempt to challenge the legality of the search of the 21st Street Residence would require admitting or otherwise establishing that Toyer lived or at least stayed at the residence such that Toyer personally enjoyed an expectation of privacy there.  Of course, doing so would contradict Toyer's own testimony and undercut his primary defense to the weapons charge, *i.e.*, that he did not live at or otherwise control the premises where they were found.

warrant.  First, he contends that his counsel should have argued that the affidavit did

not establish the veracity, reliability, and basis of knowledge of the CI's supplying

information that police used to obtain the warrant.  Second, Toyer argues that his

counsel should have claimed that the affidavit fails to establish a "proper connection"

between Toyer personally and the 21st Street Residence.  (*Id.* at 8).  However, even

assuming Toyer had standing to contest the search of the residence, neither of these

arguments is availing.[11]

The search warrant at issue was issued on November 16, 2005, by a Calhoun

County, Alabama, district court judge upon the application and supporting affidavit

of Investigator Harry Dodson of the Calhoun County Drug Task Force.  (Ex. 3

---

[11]In addition to these Sixth Amendment ineffective assistance claims related to failure to secure suppression of the weapons, Toyer also asserts a freestanding Fourth Amendment claim that the weapons were due to be suppressed because the warrant authorizing the search was ostensibly unsupported by probable cause.  (*See* § 2255 Brief at 6-12).  However, a freestanding Fourth Amendment suppression claim is not cognizable in a § 2255 proceeding unless the defendant can show that he did not have a full and fair opportunity to litigate the claim previously.  *See Dasher v. United States*, 2008 WL 785563, *2 (M.D. Fla. March 20, 2008) (unpublished); *United States v. Johnson*, 457 U.S. 537, 562 n.20 (1982) (dicta); *see also Owens v. United States*, 387 F.3d 607, 609 (7th Cir. 2004); *United States v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2003); *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993); *United States v. Hearst*, 638 F.2d 1190, 1196 (9th Cir. 1980); *cf. Stone v. Powell*, 428 U.S. 465, 494 (1976) (establishing such a rule regarding state prisoners seeking habeas relief under 28 U.S.C. § 2254); *but see Kaufman v. United States*, 394 U.S. 217 (1969); *Stone*, 428 U.S. 479-81 & n. 16; *Baranski v. United States*, 515 F.3d 857, 859-60 (8th Cir. 2008).  Toyer does not contend that he was not afforded a full and fair opportunity to litigate any Fourth Amendment claim previously, and the record belies the validity of any such claim.  Accordingly, this court will not consider Toyer's freestanding Fourth Amendment claim in these proceedings.  Rather, the court will only consider the such issues insofar as they underlie a Sixth Amendment ineffective assistance claim.  *See Dasher*, 2008 WL 785563, *2 n.2; *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008); *Kimmelman v. Morrison*, 477 U.S. 365, 375-83 (1986).

Even assuming a Fourth Amendment claim is cognizable under § 2255, because Toyer did not raise such a claim on direct appeal, it is procedurally defaulted unless the default is excused.  (*See* § 2255 Brief at 10); *United States v. Montano*, 398 F.3d 1276, 1279-80 (11th Cir. 2005).  In order to overcome the procedural bar, a defendant must either show adequate cause for the default and actual prejudice or he must show that he is "actually innocent" of the offense for which he was convicted.  *Montano*, 398 F.3d at 1280; *Bousley v. United States*, 523 U.S. 614, 622 (1998).  Toyer argues that the default should be excused based upon his counsel's allegedly deficient performance in contesting the validity of the warrant.  (§ 2255 Brief at 10-11).  In order to excuse a procedural default, an error of counsel must rise to the level of ineffective assistance of counsel in violation of the Sixth Amendment.  *See Cross v. United States*, 893 F.3d 1287, 1290 (11th Cir. 1990); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Because the court concludes, however, for reasons stated in the text, that all of Toyer's ineffective assistance claims relating to the admission of the weapons are due to be rejected and he fails to excuse his procedural default otherwise, the substantive underlying claim is likewise doomed.  *See, e.g., Cross, supra.*

("SearchWarrant")).  The warrant authorized law enforcement officials to search for evidence of unlawful possession of a controlled substance in violation of Ala. Code § 13A-12-212 (1975), namely, cocaine and paraphernalia used to package and sell controlled substances, including firearms, at the 21st Street Residence, which is described as "the residence of Mark Anthony Toyer." (*Id.*) Dodson's affidavit recites Toyer's criminal history, including convictions in 1995 and 1999 for manslaughter and second degree assault, respectively; several arrests for assault and drug possession, including one in 2003 where he had 13 individual bags of cocaine; and an episode in February 2003 in which a law enforcement agent made an undercover purchase of .5 grams of cocaine from Toyer.  (Ex. 2 ("Warrant Aff.") at 1-2).  Dodson relates that agents received information from one or more CI's on each of July 18; July 20; November 8; and November 9, 2005, to the effect that Toyer was selling illegal drugs, including cocaine, out of the 21st Street Residence and that he was also storing firearms there.  (Warrant Aff. at 2).  Dodson also stated that on November 9, 2005, he received information from a "reliable [CI] that Darryl Fitzgerald James was selling [c]ocaine for Mark Toyer when Toyer was not present at his residence." (*Id.*) In addition, Dodson asserted in his affidavit as follows:

> Within the last Seventy Two (72) hours Agent Wigley and I conducted
> a controlled purchase of Cocaine from Darryl Fitzgerald James out of
> [the 21st Street Residence].  This is the residence of Mark Anthony

Toyer.  This was conducted with a Confidential Reliable Informant, whose information has led to numerous arrests and convictions in the past.  The Reliable [CI] was given a sum of Task Force Funds with which to complete the transaction. The [CI]'s person was searched for money and contraband.  None was located.  The [CI] walked to the residence and was handed a white substance that later showed a presumptive positive for Cocaine.  The [CI] then handed the Task Force Funds over to Darryl Fitzgerald James.  The [CI] then walked to a pre-determined meeting location and handed the Cocaine over to me.  The [CI]'s person was again searched and no contraband or money was located.

(Warrant Aff. at 3).  The warrant was executed on November 18, 2005, and the search yielded, among other things, the two handguns that Toyer was charged was possessing in violation of 18 U.S.C. § 922(g)(1).  (*See* Ex. 4 ("Warrant Return")).

Toyer first argues that his counsel was ineffective for failing to contend that Dodson's affidavit failed to establish probable cause, as required by the Fourth Amendment, because it allegedly does not sufficiently show the veracity, reliability, and basis of knowledge of the CIs. "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).  The task of a magistrate issuing a search warrant in assessing whether a supporting affidavit gives rise to probable cause involves a "practical, common-sense decision." *United States v. Foree*, 43 F.3d 1572, 1575 (11th Cir. 1995) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

28

Affidavits offered by law enforcement officials in support of an application for a search warrant "are normally drafted in the midst and haste of a criminal investigation.  Technical requirement of elaborate specificity once exacted under common law pleading have no place in this area." *Gates*, 462 U.S. at 235 (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)).  Where information for a warrant is supplied by an informant, the veracity, reliability, and basis of knowledge of an informant are relevant considerations in assessing the totality of the circumstances, but they are not independent elements; a deficiency in one area may be compensated for by a strong showing as to others, or by some other indicia of reliability, including corroborating evidence gathered by law enforcement. *See Gates*, 462 U.S. at 230-35; *Massachusetts v. Upton*, 466 U.S. 727, 732-35 (1984) (per curiam); *Brundidge*, 170 F.3d at 1352-53; *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009); *United States v. Foree*, 43 F.3d 1572, 1576 (11th Cir. 1995). Indeed, "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (quoting *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2002)).  A reviewing court is required to afford "great deference" to the probable cause determination of the judicial official issuing a search warrant. *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*,

393 U.S. 410, 419 (1969)); *United States v. Robinson*, 62 F.3d 1325, 1331 (11th Cir. 1995).  Accordingly, an initial probable cause determination is not subject to later scrutiny under a de novo standard but is reviewed only to ensure that the probable cause determination is supported by a "substantial basis."  *Upton*, 466 U.S. at 728; *Gates*, 462 U.S. at 238; *United States v. Foree*, 43 F.3d 1572, 1576 (11th Cir. 1995).

With regard to the information provided by CIs, the affidavit first recounts five tips received by law enforcement officials between July 18 and November 9, 2005, to the effect that Toyer and another individual allegedly working for him, Darryl Fitzerald, had been selling illegal drugs, including cocaine, at the 21st Street Residence and that Toyer was also storing weapons there.  (Warrant Aff. at 2).  It might be assumed that such information, standing alone, would not be sufficient to establish probable cause; there are no underlying facts alleged to support the reliability of those informants; the basis of their knowledge is not apparent; and, with the exception of one tip specifically describing several weapons being stored on the premises, the allegations of wrongdoing are in brief, generic terms.  However, that information was buttressed by other evidence in the affidavit.  Corroboration of an informant's tips may take the form of reports of a defendant's criminal record and prior criminal activity.  *See Foree*, 43 F.3d at 1576 & n.5.  The affidavit here recited Toyer's criminal history, which included multiple felony convictions; two arrests in

30

1998 for possession of marijuana; sale of cocaine to an undercover officer in 2003;
and another arrest in 2003 whereupon he was found in possession of 13 individual
bags of cocaine.  Even more significant is the affidavit's recounting of the controlled
buy of cocaine at the residence by a CI within 72 hours of the warrant application.
"It is clear that a properly executed controlled buy ... is sufficient, standing alone, to
establish probable cause." *United States v. Roundtree*, 299 Fed.Appx. 905, 907 (11th
Cir. Nov. 8, 2008) (unpublished); *see also United States v. Horne*, 198 Fed.Appx.
865, 871 (11th Cir. Sept. 18, 2006) (unpublished) ("[G]enerally, a controlled buy,
when executed properly, is a reliable indicator as to the presence of illegal drug
activity." (quoting *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006));
*Haygood v. Johnson*, 70 F.3d 92, 95 (11th Cir. 1995) ("[O]bservation of [a]
controlled buy can overcome questions about [an] informer's credibility" (citing
*United States v. Martin*, 920 F.2d 393, 398-99 (6th Cir. 1990)); *United States v.
Warren*, 42 F.3d 647, 652 (D.C. Cir. 1994) ("Our cases consistently have recognized
that police establish probable cause for a search where they corroborate a reliable
informant's tip about drug activity at a residence by conducting a single controlled
buy of illegal narcotics.").  Toyer makes no claim here regarding the procedure or
timing of the controlled buy, and the affidavit indicates that the police observed the
common formalities to a substantial degree.  *See United States v. Nelson*, 450 F.3d

1201, 1214 (10th Cir. 2006); *Sidwell*, 440 F.3d at 869.  As such, the court concludes

that, regardless of any doubts regarding the veracity or basis of knowledge of the CIs,

the initial probable cause determination underlying the search warrant was supported

by a substantial basis.[12]

This result is not altered by Toyer's second argument that his counsel's should

have argued that the warrant was invalid because it did not "establish[ ] a proper

connection between [Toyer] and the residence to be searched."  (§ 2255 Brief at 8).

Toyer is laboring under the assumption that the warrant was not valid unless it was

supported by "probable cause to believe that [the 21st Street Residence] is [Toyer's]

residence."  (*Id.* at 10).  That belief, however, is mistaken.  "The critical element in

a reasonable search is not that the owner of the property is suspected of crime but that

there is reasonable cause to believe that the specific 'things' to be searched for and

seized are located on the property to which entry is sought." *Wyoming v. Houghton*,

526 U.S. 295, 302 (1999) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556

(1978)).  "[A]n affidavit in support of a search warrant does not need to name or

describe the person who sold the drugs or name the owner of the property." *United*

---

[12]Even assuming for the sake of argument that the affidavit did not support a finding of probable cause, Toyer's claim on this issue is still due to fail.  Under *United States v. Leon*, 468 U.S. 897 (1984), it is inappropriate to suppress evidence obtained pursuant to a later-declared invalid warrant if the executing officers reasonably relied on the warrant.  *Id.* at 922-23.  The court concludes that such "good faith" exception to the exclusionary rule would apply here.  *See Martin*, 297 F.3d at 1313-14; *United States v. El-Alamin*, 574 F.3d 915, 924 (8th Cir. 2009); *United States v. Lewis*, 262 Fed.Appx. 950, 951-52 (11th Cir. Jan. 18, 2008) (unpublished); *United States v. Williams*, 177 Fed.Appx. 914, 917 (11th Cir. April 24, 2006) (unpublished); *United States v. Harris*, 172 Fed.Appx. 950, 959-62 (11th Cir. March 29, 2006) (unpublished).

*States v. Pinson*, 321 F.3d 558, 564 (6th Cir. 2003); *see also United States v. Booker*, 131 Fed. Appx. 234, 241 (11th Cir. May 12, 2005) (unpublished) ("[E]ven taking as true Booker's defense ... that the CI was mistaken as to the identity of the person who sold him cocaine base during the controlled buy, this fact would not have affected whether the government established probable cause to believe that drugs would be found at that residence."); *United States v. Rodrigue*, 560 F.3d 29, 34 (1st Cir. 2009) ("[The defendant's] relationship to the campsite [searched pursuant to a warrant] was neither here nor there for purposes of establishing probable cause to search for marijuana"); *United States v. Blaylock*, 535 F.3d 922, 927 (8th Cir. 2008) ("[A] search warrant need not name any particular defendant against whom evidence will be used in order to be valid; it must only 'particularly describ[e] the place to be searched, and the persons or things to be seized.'" (quoting U.S. Const. amend. IV)). In short, the warrant was authorized because the affidavit supplied probable cause to believe that drugs would be found at the 21st Street Residence, based upon the tips of the CI's along with the corroboration supplied by the recent controlled buy of cocaine at the house.  Whether Toyer lived at the residence or whether another individual sold the drugs in the controlled buy simply do not undercut the validity of the search warrant.  Because the warrant was supported by probable cause, Toyer cannot show either deficient performance by his counsel or that he was prejudiced

under *Strickland*.  These claims are due to be denied.

### c.   Failure to Seek Disclosure of the Identity of the Confidential Informants

Toyer says that his counsel was also ineffective because he did not seek to compel the disclosure of the identity of the CIs that supplied information used in the search warrant application.   However, Toyer cannot establish either deficient performance or prejudice because any attempt to compel such disclosure would have been futile.  The CIs here, as recited in the affidavit, were but mere tipsters providing information used in securing a search warrant for the 21st Street Residence.  They did not jointly participate in the "possession" offenses with which Toyer was charged, they did not testify at trial, and Toyer has offered nothing to suggest how their testimony might have significantly aided in his defense.  It is well established that disclosure of a CI's identity is neither required nor appropriate in such circumstances. *See United States v. Varella*, 692 F.2d 1352, 1355-56 (11th Cir. 1982); *United States v. Diaz*, 655 F.3d 580, 588 (5th Cir. Unit B 1981)[13]; *United States v. Arrington*, 618 F.2d 1119, 1125 (5th Cir. 1980); *United States v. Mendoza*, 433 F.2d 891, 894 (5th Cir. 1970) ("[T]he Government need not disclose the identity of an informer when the sole purpose to be served is to attack the probable cause supporting a search

---

[13]Decisions by a Unit B panel of the former Fifth Circuit are binding precedent in the Eleventh Circuit.  *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

warrant."); *see also United States v. Flores*, 572 F.3d 1254, 1265 (11th Cir. 2009);

*Roviaro v. United States*, 353 U.S. 53, 60-62 (1957).

### d.   Failure to Move for a *Franks* Hearing

Toyer argues that his counsel was ineffective because he did not attempt to

attack the warrant affidavit by moving for a hearing pursuant to *Franks v. Delaware*,

438 U.S. 154 (1978).  (§ 2255 Brief at 23, 25).  In *Franks*, the Supreme Court held

that, although a search warrant affidavit is sufficient on its face to support a probable

cause determination, a defendant may be entitled to challenge the veracity of the

affidavit after the warrant has been issued and executed.  (*Id.* at 164-71).  The Court

made clear that "a presumption of validity" attaches to the affidavit supporting a

search warrant.  (*Id.* at 171).  But "where the defendant makes a substantial

preliminary showing that a false statement knowingly and intentionally, or with

reckless disregard for the truth, was included by the affiant in the warrant affidavit,

and if the allegedly false statement is necessary to the finding of probable cause, the

Fourth Amendment requires that a hearing be held at the defendant's request."  (*Id.*

at 155-156).  The Court explained that

> [t]o mandate an evidentiary hearing, the challenger's attack must be
> more than conclusory and must be supported by more than a mere desire
> to cross-examine. There must be allegations of deliberate falsehood or
> of reckless disregard for the truth, and those allegations must be
> accompanied by an offer of proof.  They should point out specifically

> the portion of the warrant affidavit that is claimed to be false; and they
> should be accompanied by a statement of supporting reasons. Affidavits
> or sworn or otherwise reliable statements of witnesses should be
> furnished, or their absence satisfactorily explained. Allegations of
> negligence or innocent mistake are insufficient. The deliberate falsity
> or reckless disregard whose impeachment is permitted today is only that
> of the affiant, not of any nongovernmental informant.

*Franks*, 438 U.S. at 171. "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156; *see also United States v. Sarras*, 575 F.3d 1191, 1218-19 (11th Cir. 2009); *United States v. Novaton*, 271 F.3d 968, 986-88 (11th Cir. 2001); *O'Ferrell v. United States*, 253 F.3d 1257, 1267-71 (11th Cir. 2001).

In support of his claim that his counsel should have attacked the affidavit under *Franks*, Toyer repeatedly stresses that the affidavit contains erroneous allegations to the effect that the 21st Street Residence was Toyer's. He also emphasizes that the allegations of the affidavit regarding a high volume of narcotics and a large cache of military-style firearms on the premises were not substantiated when the warrant was executed. The court concludes, however, that Toyer has wholly failed to show how

36

he might have been entitled even to an evidentiary hearing on the veracity of the affidavit, much less that he could have prevailed at such proceeding so as to invalidate the warrant and exclude the weapons.   At best, Toyer's challenges implicate the veracity of the CIs, but as *Franks* itself makes clear, the preliminary showing of impeachment that would entitle one to a hearing must be "of the affiant, not of any nongovernmental informant."  438 U.S. at 171.  Toyer offers nothing to support that the warrant affiant, Agent Dodson, misrepresented or omitted facts to the judge issuing the warrant, much less that he did so deliberately or recklessly.  Toyer seems to assume that if his counsel had simply requested a *Franks* hearing, he would have then been able to cross-examine Dodson as a matter of course.  (*See* § 2255 Brief at 25).  However, Toyer would not have been entitled to a hearing based simply upon such "a mere desire to cross-examine." (*Id*.)  Further, for reasons already stated, even if Toyer did not, in fact, live at the residence, that would not defeat the determination that probable cause existed to search the premises for drugs, paraphernalia, and weapons, given the allegations of the CIs stating that drug sales had been ongoing there, as corroborated by the controlled buy.  Toyer cannot show either deficient performance or prejudice in connection with his counsel's failure to pursue a *Franks* hearing.  Thus, this claim is without merit.

e.  **Failure to Call Additional Witnesses at the Suppression Hearing as Related to Exclusion of the Weapons**

Toyer contends that his counsel was ineffective because he should have called Toyer's mother, brother, sister, and wife, as well as Agent Dodson, the affiant on the search warrant application, to testify at the suppression hearing.  To the extent that Toyer argues that his counsel should have called members of Toyer's family, he cannot show either deficient performance or prejudice.  Toyer suggests that his family members should have been called at the suppression hearing, as they were at trial, to give testimony corroborating Toyer's claim that he did not live at the 21st Street Residence.[14]  As discussed above, however, proof that Toyer did not live at the residence would not have undercut the validity of the warrant or the search performed pursuant thereto.  Indeed, such testimony could only serve to confirm that Toyer lacked an expectation of privacy in the residence, as required to object to the search under the Fourth Amendment.  *See Sweeting*, 933 F.2d at 964.  Accordingly, the failure to call members of Toyer's family at the suppression hearing was not deficient performance and caused no prejudice.

---

[14]Toyer also seems to offer that his brother, Maurice, would have also testified at the suppression hearing, as he did at trial, in corroboration of Toyer's testimony to the effect that the automobile in which the ammunition was found, as well as the ammunition itself, belonged to Maurice, and that Maurice had not told Toyer of the presence of the ammunition in the vehicle. (§ 2255 Brief at 33).  However, while such testimony is relevant to Toyer's substantive guilt, *i.e.*, whether his possession of the ammunition was knowing, it is immaterial to whether the ammunition was subject to exclusion, which depended solely upon the credibility of testimony dealing with whether Toyer consented to the search of the automobile.

38

Toyer also complains that his counsel should have subpoenaed Agent Dodson to testify at the suppression hearing.  Again, even assuming that, notwithstanding his own testimony to the contrary, Toyer had a personal right of privacy at stake in the 21st Street Residence, nowhere in his § 2255 materials does Toyer explain what testimony he expected Dodson to give or how it supposedly would have made a difference in the outcome of the motion to suppress.  Also, as with counsel's failure to call Agent Germanowski, the failure to call Agent Dodson was a reasonable strategic decision.  To the extent Toyer is suggesting that he could have used the suppression hearing as an opportunity to cross-examine Dodson relative to his search warrant affidavit, Toyer would not have been entitled to do so under *Franks*, as discussed above, unless he first made a substantial preliminary showing that Dodson had intentionally or recklessly misrepresented or omitted facts in the affidavit that were material to the probable cause determination.  Toyer has made no such showing even at this point.  Toyer's ineffective assistance claim on this score is due to be denied.

> **f.    Failure to Impeach Wigley's Suppression Hearing Testimony Regarding the Motor Vehicle Title**

Toyer contends that his counsel failed to adequately investigate his case so as to be able to impeach suppression hearing testimony by Agent Wigley to the effect

that the search of 21st Street Residence yielded a motor vehicle title in Toyer's name. (*See* Supp. Hrg. Vol. I at 19).  Toyer emphasizes that Wigley subsequently admitted at trial that the title was actually found in the automobile that Toyer drove to meet Wigley, not in the searched residence, and was in the name of Toyer's brother.  (*See* Trial Vol. I at 29, 53, 63).  However, even assuming for the sake of argument that Toyer could show deficient performance, he cannot satisfy *Strickland*'s prejudice prong.  Again, even assuming that Toyer had standing to object to the search, the warrant's validity did not depend upon probable cause to believe that Toyer personally lived at the residence.  Moreover, "items of evidence that emerge after [a] warrant is issued have no bearing on whether or not a warrant was validly issued." *Maryland v. Garrison*, 480 U.S. 79, 85 (1987).  Thus, neither the name on the title nor whether it was found in the search of the residence could not affect whether the warrant was validly issued.  Agent Wigley testified at trial to the true state of affairs, *i.e.*, that the title was in Toyer's brother's name and was recovered from the vehicle, not the house, so the jury was aware of those circumstances when it convicted Toyer.

Further, Toyer's counsel renewed his motion to suppress at trial, relying in part upon Wigley's admission that his prior suppression hearing testimony regarding the title had been inaccurate.  (Trial Vol. II at 4-5).  Nonetheless, the court denied that motion, explaining that the title issue, while relevant to Toyer's knowledge and

whether he was guilty of the offenses charged, was not material to the admissibility of the weapons. (*Id.* at 7-8, 26). Accordingly, there is no likelihood that the outcome of either the suppression hearing or the trial would have been different had Toyer's counsel made an argument about Wigley's testimony regarding the vehicle title at an earlier point in the proceedings. This claim is without merit.

### 3. The Failure to Argue that Toyer's Arrest the Day After the Search Warrant was Executed Violated the Fourth Amendment

On November 19, 2005, the day *after* the drug task force officials had executed the search warrant, recovered the weapons and the ammunition, and obtained Toyer's custodial statements, Agent Dodson obtained a warrant for Toyer's arrest from the District Court of Calhoun County, Alabama. (*See* Ex. 7). Such warrant was based upon Dodson's sworn statement that Toyer, after having been convicted of a crime of violence, namely, manslaughter, was, on or about the preceding day, at or near the 21st Street Residence, in possession of a Taurus .380 revolver, in violation of ALA. CODE § 13A-11-72(a) (1975). (*See* Ex. 7 & 8). Toyer claims that his counsel was ineffective for failing to argue that Toyer's arrest pursuant to the warrant violated the Fourth Amendment on the ground that Dodson's sworn statement supporting the warrant failed to establish probable cause because it was in conclusory terms that merely tracked the language of the statute. (§ 2255 Brief at 18-19). He further argues

that his counsel should have argued that his arrest was therefore invalid and that this court "had no authority to try [him]." (*Id.* at 17). The court disagrees.

"An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980). "[A criminal defendant] is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by ... police misconduct." *Id.* Thus, this court could not have been deprived of jurisdiction based upon any alleged legal infirmity in the arrest warrant. Likewise, the "exclusionary rule applies only to evidence obtained as a result of an illegal search and seizure." *United States v. Cain*, 587 F.2d 678, 680 (5th Cir. 1979). The weapons, the ammunition, and Toyer's custodial statements were all obtained by police *before* Toyer was formally arrested pursuant to the warrant in question, and he points to no evidence that resulted from that arrest that was admitted at trial. Accordingly, there was nothing to suppress, *see id.*; *United States v. Lewis*, 621 F.2d 1382, 1389 (5th Cir. 1980) ("No evidence from the warrantless search was used. There was nothing to suppress."), and any attempt by Toyer's counsel to contest the arrest warrant would have been pointless. As Toyer cannot show deficient performance or prejudice, this claim is due to be rejected.

### 4.   Alleged Deficiencies of Counsel During the Trial

### a.   Opening and Closing Arguments

Toyer brings a number of claims impugning the performance of his counsel in connection with the trial.  However, most of these amount to nothing more than undeveloped, generalized complaints.  For example, Toyer first argues that, during opening and closing arguments, counsel "failed to simplify the case for the [j]ury's understanding," with inadequate emphasis, for Toyer's taste, on the fact that Toyer "actually worked for the same Government that [was] now prosecuting him." (§ 2255 Brief at 36).  This claim is frivolous.  Counsel's opening and closing remarks to the jury are generally strategic matters that typically will not be second-guessed by the courts. *See Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003); *Grossman v. McDonough*, 466 F.3d 1325, 1349 (11th Cir. 2006).  Contrary to Toyer's assertion, that he had previously worked as a CI for the county drug task force and that agents employed a ruse to draw him to the church parking lot on the day that the search warrant was executed simply are not particularly significant to any issues of guilt, except insofar as they provide background information and context to certain testimony.  Even so, the jury was made well aware of these facts.  (*See* Trial Vol. I at 22-23, 90-95; Trial Vol. II at 46-48).  Toyer fails to demonstrate either deficient performance or prejudice under *Strickland*.

43

### b.   Examination of Witnesses

Toyer also says that his counsel's cross-examination of witnesses "seemed unfocused, inattentive, and overreaching at times." (*Id.* at 37).   In this vein, he laments that his counsel "appears not to have a single train of thought while [c]ross-examining Darryl James." (*Id.*)   James testified on behalf of the prosecution that he had been living at the 21st Street Residence for about a year at the time the search warrant was executed and that Toyer, as well as several other individuals, had also been living, and selling cocaine out of, the house all during that time.   (Trial Vol. I at 71-75).   James further testified that he had seen Toyer with the weapons he was charged with possessing and that Toyer regularly drove the black Chevrolet automobile in which the ammunition was found.   (*Id.* at 72, 75-79, 88-89).   To show deficient performance, a defendant "must establish that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (citation and internal quotation marks omitted).   The only specific criticism Toyer offers regarding his counsel's questioning of James is that he went "delving into [James's] crack habit," which Toyer thinks is "just irrelevant." (§ 2255 Brief at 37).   Questioning James about his crack habit, however, was a reasonable trial strategy designed to convey to the jury that James, a prosecution witness, routinely engaged

in criminal activity and was an untrustworthy and unreliable character.  Toyer has not shown either deficient performance nor any conceivable prejudice.

Toyer's argument that his counsel "fails to properly [c]ross-examine the relevance of witness Carl Anderson's testimony" (§ 2255 Brief at 37), is likewise due to meet with rejection. Anderson, an agent with the county drug task force, testified for the prosecution that he was present during another meeting between Toyer and agents in the church parking lot, which occurred in mid-August 2005, several months before the search warrant for the 21st Street Residence was executed in mid-November.  (Trial Vol. I at 90-92).  Anderson related that, as they were preparing for Toyer to perform a controlled buy, agents searched the black vehicle Toyer had arrived in and found some ammunition.  (*Id.* at 91).  Anderson said that when the agents confronted Toyer and told him that he could be arrested for possessing ammunition, he "kind of became upset" with the agents and made "a couple statements about [how] they didn't understand how it was out in the street; they didn't live out in the street."  (*Id.* at 91-92).  Anderson thus corroborated similar testimony previously given by Agent Wigley on the same matters.  (*See id.* at 49-51).  Toyer says that his counsel was ineffective because he failed to ask Anderson the following: "Did the defendant appear to know that the ammunition was in the vehicle?" (§ 2255 Brief at 37).  This claim is also without merit.  Toyer's counsel acted reasonably.

Anderson's testimony on direct examination already suggested that Toyer was aware that ammunition was in the vehicle.  When Toyer was confronted by the agents about its presence, he responded with defiance, rather than surprise or with a denial of knowledge otherwise.  Toyer cannot show either deficient performance or prejudice.

Toyer also argues that his counsel was ineffective in presenting his defense in that he "failed to elicit specific facts out of witness Maurice Toyer," the defendant's brother (hereinafter "Maurice").  (§ 2255 Brief at 37).  Maurice's testimony indicated that he owns the black Chevrolet Lumina automobile that Toyer drove to meet Agent Wigley on the day that the search warrant was executed.  (Trial Vol. I at 115-16).  Maurice further testified that he owns several firearms, including a .357 magnum and a .380 handgun, and that he used the Lumina to take his guns to shoot them "off in the country" from time to time.  (*Id.* at 117).  He explained that, "[o]n occasion" he left ammunition in the Lumina and had forgotten to tell Toyer of that fact when he allowed Toyer to borrow the car.  (*Id.* at 118).

Toyer contends that if his counsel had asked Maurice "about leaving ammunition in the vehicle on this particular occasion," rather than asking questions in more general terms, "the [j]ury would have been left with no choice but acquittal on the ammunition count."  (§ 2255 Brief at 37-38).  Toyer's conclusion is a non-sequitur.  First, Toyer's counsel did attempt to elicit testimony from Maurice about

particular "occasions when [Toyer] has borrowed the car, and there's been ammunition in it that you knew about?" (Trial Vol. I at 118), but Maurice answered merely as follows: "Well, when I let him borrow the car, I mean, he is just going and coming right back, but I haven't, you know, in terms of telling him that it was ammunition in the car." (*Id.*) Second, Toyer does not even allege in his motion what additional specific testimony Maurice might have provided, nor has Toyer provided with an affidavit from Maurice. Toyer also does not explain how Maurice's alleged additional information might have made any difference at trial, particularly given that Maurice's testimony already suggested that the ammunition was his, that he had left it in the vehicle and then loaned the vehicle to Toyer without telling him about the ammunition. Toyer has failed to show either deficient performance or prejudice.

### d.      Failing to Call Additional Trial Witnesses

Toyer argues that his counsel was ineffective on the theory that he "failed to call witnesses who were relevant to the understanding of what actually occurred inside [the 21st Street Residence." (§ 2255 Brief at 38). Toyer first says that his counsel should have called Toyer's wife, Tiesha Sterling, to testify at trial. Toyer alleges in his motion that she would have testified that she was the owner of the 21st Street Residence; that she allowed several drug dealers to use the residence; and that Toyer did not enter the house because of tensions between him and both her and her

brothers, at least one of whom lived there. (*Id.*) However, Toyer's counsel present had already presented testimony from Toyer's brother and sister to corroborate Toyer's own testimony that Toyer lived with them and their mother at the Dooley Avenue Residence and that he did not live or stay at the 21st Street Residence where the weapons were found. (*See* Trial Vol. I at 113-16; Trial Vol. II at 28-39). "[I]t is not ineffective to fail to present 'redundant evidence.'" *Jennings v. McDonough*, 490 F.3d 1230, 1244 (11th Cir. 2007) (quoting *Waters*, 46 F.3d at 1512); *see also United States v. Dimatteo*, 759 F.2d 831, 833 (11th Cir. 1985) (defendant failed to show prejudice where testimony of witness not called would have been cumulative of other statements adduced by defense counsel on cross examination of government witness). Further, all the court has before it is Toyer's self-serving, unvarnished assertion regarding how his wife would have supposedly testified; he has offered no affidavit from her or other evidence to that effect. Further, in light of Toyer's claims that he and his wife were separated and had ongoing "problems," (§ 2255 Brief at 38), his counsel could have reasonably assumed that she would not testify favorably for him and declined to call her in the exercise of trial strategy. *See Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). As such, this ineffective assistance claim is also due to be denied as speculative and insufficiently supported. *Cockrell*, 720 F.2d at 1427; *see also Guerra*, 628 F.2d at 413; *Alexander*, 841 F.2d at 375; *Ashimi*, 932 F.2d at

650.

Toyer says that his counsel also should have called two other witnesses: Jerome Sterling, who is Toyer's brother-in-law ("Jerome"); and Thomas Crawford ("Crawford"). Toyer now offers a conclusory assertion that Jerome and Crawford were CIs referenced in the affidavit for the search warrant. (*Id.; see also* Ex. 6, hereinafter "Toyer Aff.", at "Part Two"). Toyer relates that he and Crawford "once were best friends," but Toyer "beat him up because he was making sexual advances on [Toyer's] wife," since which time, Toyer says, Crawford "seemed as if he was willing to do anything to harm [Toyer]." (Toyer Aff., Part Two). Toyer relates that Jerome was Crawford's friend and that, on the night that Toyer "beat up" Crawford, Jerome had attempted, Toyer believes, to exercise revenge1 by shooting at Toyer from a hidden location. (*Id.*) Toyer further states that he had become wary of Jerome and told him to stay away from him, because of the shooting incident and because he believed Jerome suspected that Toyer had assisted police in an operation that had resulted in Jerome's arrest. (*Id.*)

Toyer has failed to show that Jerome and Crawford were available to testify or that they would have done so. In fact, given Toyer's acknowledgment that both of these individuals harbored ill-will towards him, that they would have been available and inclined to testify favorably in his defense would seem unlikely. As such, the

failure to call them would be reasonable trial strategy. Moreover, to the extent that Toyer is suggesting that Jerome and Crawford might have testified about their actions or knowledge relating to their respective roles as alleged CI's in Toyer's case, Toyer has not explained how his trial counsel was supposed to know at the time of trial that they had acted in such a capacity. Indeed, Toyer's claim in his § 2255 motion that his counsel should have attempted to compel disclosure of the identities of the CIs appears to belie that Toyer or his counsel knew the identity of the CIs. Even so, Toyer also has failed to offer any evidence specifying what Jerome or Crawford's trial testimony actually would have been, nor has he shown that it might have made a difference in the outcome of the trial. Accordingly, the court concludes that Toyer has not met his burden to establish deficient performance or prejudice under *Strickland*.

> ### e.   Failure to Seek a Plea Bargain or to "Advise" of the United States Sentencing Guidelines

Included on a list entitled "Miscellaneous Grounds" are assertions alleging that his trial counsel was ineffective because he "failed to seek a plea bargain" and "failed to advise defendant of the United States Sentencing Guideline Manual System,"(§ 2255 Brief at 38). Toyer offers no further allegations, explanation, or analysis of these claims. They are due to be denied, as explained below.

The first claim fails because Toyer has not alleged that the prosecution ever offered a plea bargain, and his counsel cannot force the prosecution to plea bargain. *See Zamora v. Dugger*, 834 F.2d 956, 960 (11th Cir. 1987); *see also Eisemann v. Herbert*, 401 F.3d 102, 109 (2d Cir. 2005) ("[T]he failure to obtain a plea bargain is not evidence of ineffective assistance of counsel when the record does not contain evidence that one might have been offered." (citing *Burger v. Kemp*, 483 U.S. 776, 785-86 (1987)). Nor has Toyer alleged that he would have accepted a plea bargain had one been offered, as required to show prejudice. *Cf. Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (holding that, where a defendant alleges ineffective assistance in the context of declining to accept a plea offer, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded guilty and would not have insisted on going to trial." (internal quotation marks, brackets, and citation omitted)). Accordingly, this claim is without merit.

Toyer's claim based on his counsel's failure to "advise" him of the Sentencing Guidelines "system" is also due to fail. Toyer did not plead guilty, and there is no allegation that he would consider doing so if given the chance. Accordingly, Toyer's conclusory allegations are insufficient as a matter of law.

### f.    Ineffective Assistance Claims Raised on Direct Appeal

Toyer also says in his list of "Miscellaneous Grounds" that his counsel was ineffective based upon the "[g]rounds specified in [his] [b]rief on appeal." (§ 2255 Brief at 38). Toyer thus seeks to reassert the ineffective assistance claims that he raised on direct appeal, which the Eleventh Circuit declined to address at that time. Toyer has sought to raise these claims, however, by merely referring the court to his appellate brief. (*Id.*) Toyer has not filed that brief in this court, nor is it otherwise in the record. However, the court notes that the brief is available on Westlaw. *See* 2007 WL 5157651 (Appellate Brief). Even assuming that the court may take judicial notice of the brief, *see* Rule 201, FED. R. EVID., Toyer is not entitled to any relief. As reflected in the brief and in the Eleventh Circuit's opinion itself, one aspect of Toyer's ineffective assistance claim on direct appeal was that his trial counsel failed to object to the magistrate judge's report and recommendation denying Toyer's motion to suppress. This court has already addressed and rejected that claim. The other aspect of Toyer's ineffective assistance claim, the substance of which is discernable only in the appellate brief, was that his counsel failed to object to testimony by Darryl James that he had once seen Toyer fire a weapon at another person in a car. *See* 2007 WL 5157651, *18-21. However, in considering Toyer's

52

substantive claim regarding the admission of such evidence, the Eleventh Circuit stated that, although the issue was subject to review only for "plain error" due to counsel's failure to object at trial, this district court "did not err, much less plainly err, when it admitted James's testimony." *Toyer*, 274 Fed. Appx. at 848.  Because the evidence in question was admissible, the failure of Toyer's counsel to object did not constitute ineffective assistance.  *See Devier v. Zant*, 3 F.3d 1445, 1451-52 (11th Cir. 1993); *Thomas v. Jones*, 891 F.2d 1500, 1505 (11th Cir. 1989); *United States v. Costa*, 691 F.2d 1358, 1363 (11th Cir. 1982).

### 5.  Alleged Deficiencies of Appellate Counsel

#### a.  Failure to Raise Additional Suppression Issues on Appeal

Toyer's list of "Miscellaneous Grounds" of ineffective assistance also includes two claims based upon alleged deficiencies of his appointed appellate counsel.  Toyer first complains that his appellate counsel "failed to include meritorious issues from defendants (sic) Motion to Suppress in brief on appeal."  (§ 2255 Brief at 38).  The court has elsewhere addressed and rejected each of Toyer's claims relating to the denial of his motion to suppress and to his trial counsel's conduct relative thereto. Because the underlying substantive claims were meritless, any deficiencies of counsel in failing to raise or adequately pursue them on appeal cannot constitute ineffective

assistance.  *See Owen v. Secretary for Dept. of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009).

### b.      Failure to Raise a *Brady*[15] Claim on Appeal

Toyer also complains that his "[a]ppellate counsel failed to address [an] issue regarding the implicit *Brady* violation by the Government with witness Darryl James." (§ 2255 Brief at 38).

> Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  A prosecutor's obligation to disclose evidence pursuant to Brady, however, is not limited to the disclosure of potentially exculpatory evidence; rather, due process also requires disclosure of impeachment evidence for cross-examination purposes.  *Bagley*, 473 U.S. at 676.  Thus, when the credibility of a witness is at issue, the prosecution also is required to disclose "evidence of any understanding or agreement as to a future prosecution." *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

*Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 940-41.

Toyer asserts that James "was given probation in exchange for his testimony." (§ 2255 Brief at 38).  At trial, James admitted in his testimony that he had two criminal charges pending against him for "possession," one of which was related to the execution of the search warrant at the 21st Street Residence.  (Trial Vol. I at 79).

---

[15] *Brady v. Maryland*, 373 U.S. 83 (1963).

He also acknowledged that, as a habitual offender, he was facing at least 15 years imprisonment if he was convicted of possession.  (*Id.* at 87).  James also expressly denied, however, that any agreement or promises of favorable treatment had been given to him by the government in exchange for his testimony.  (*Id.* at 79, 86-87).  He likewise denied being aware that the government had indicated that his cooperation in testifying against Toyer "would be made known" to the district attorney handling James's case or even that he was "hoping [that] coming up ... and testifying [was] going to help [him]."  (*Id.* at 86-87).  In support of his broader allegation that James was given favorable treatment by the government in exchange for his testimony, Toyer points solely to the fact that, despite facing a potentially substantial sentence as a habitual offender, "[a]s soon as [James] finished his testimony at [Toyer's] trial, ... James received probation, and he was released from the Calhoun County Jail." (Toyer Aff., Part Three).  Toyer does not explain how he came to possess such knowledge, but he requests the court "to allow him discovery to substantiate the illicit dealings of the Government with this witness."  (§ 2255 Brief at 38).

As indicated above, Toyer's motion actually presents this issue only as forming the basis of a claim alleging that his appellate counsel was ineffective in violation of the Sixth Amendment because he did not raise a *Brady/Giglio* claim in the Eleventh Circuit.  (*See* § 2255 Brief at 38).  Considered it as such, it is clearly due to fail.  Even

assuming for the sake of argument that a *Brady/Giglio* violation occurred in connection with James's testimony, no such issue was ever raised in the trial court. Thus, the Eleventh Circuit would not have reviewed the claim except for plain error. *See e.g., United States v. Perez*, 473 F.3d 1147, 1149-50 (11th Cir. 2006). As such, the court concludes that the failure of appellate counsel to raise the issue was not deficient performance. *See Roberts v. Delo*, 205 F.3d 349, 352 (8th Cir. 2000) ("It will rarely be ineffective assistance for a lawyer to choose to omit issues that would receive only plain-error review."); *cf. Francois v. Wainright*, 741 F.2d 1275, 1285 (11th Cir. 1984) ("We think appellate counsel also need not raise issues that he reasonably concludes will not be considered on the merits by the appeals court."). Furthermore, Toyer has not sought to explain, even vaguely, how his counsel, at either the trial or appellate stage, knew or reasonably should have known at the relevant time of this alleged *Brady*/*Giglio* violation. Therefore, there is no basis for criticizing the performance of counsel at any stage as deficient for failing to raise such an issue.

Even if the court liberally construes Toyer's pro se § 2255 motion, *see Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002), as including a freestanding *Brady/Giglio* claim based upon suppression of an alleged "deal" given to James for his testimony, the court concludes that the claim is due to be denied. To warrant a

new trial based on the failure to disclose the existence of an agreement of leniency for a witness, the defendant must show that an agreement both existed and was reached prior to the witness's testimony.  *See United States v. Lacayo*, 758 F.2d 1559, 1563 (11th Cir. 1985) (citing *United States v. Ramirez*, 608 F.2d 1261, 1266 (9th Cir. 1979)).   Here, the only factual support Toyer offers in support of his otherwise conclusory assertion that James was given favorable consideration in exchange for his testimony is Toyer's claim that "[a]s soon as [James] finished his testimony at [Toyer's] trial, ... James received probation, and he was released from the Calhoun County Jail."  (Toyer Aff., Part Three).  However, such an allegation, standing alone, does not substantially indicate even that a promise of favorable consideration had been made at all, much less that it was made prior to James's testimony at trial.  "The mere fact that [a witness was] subsequently allowed to plead on favorable terms is not evidence that [a] plea agreement[ was] secretly reached prior to the witness['s] testimony and improperly withheld from the defense."  *United States v. Molina*, 75 F.3d 600, 602 (10th Cir. 1996); *see also Tarver v. Hopper*, 169 F.3d 710, 717 (11th Cir. 1999) ("[The witness] testified at trial that he was not promised a deal. We think [the witness's attorney] and his client were merely trying to cooperate in hopes of improving their bargaining position later.  *Giglio*, therefore, required no disclosure." (citing *Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir. 1994)); *Reagor v. United*

57

*States*, 488 F.2d 515, 516 n.5 (5th Cir. 1973) ("The fact that [the witness] was rewarded for his testimony does not establish the fact of a promise of leniency ... .").

Accordingly, Toyer is not entitled to relief.[16]

### C.   Denial of Counsel and Suppression of Statements Based on the Police "Ruse"

Toyer also urges throughout his brief that his custodial statements were due to be suppressed because they were the product of the police "ruse" previously described, wherein Agent Wigley lured Toyer to meet him by telling Toyer that he would be acting as a CI in making a controlled drug buy from a third party. At times, Toyer seems primarily to object simply to the fact that the police might be permitted to resort to deception in dealing with him. He also seems to claim, however, that his "continuing" right to counsel under the Sixth Amendment was violated by the ruse on the theory that he had previously plead guilty to offenses in state court and that a condition of his plea was that he was required to cooperate with the Calhoun County Drug Task Force.  (§ 2255 Brief at 21-22).  He explains that this condition "was

---

[16]Toyer summarily asks to perform "discovery" relating to his *Brady/Giglio* claim.  (§ 2255 Brief at 38).  Rule 6(a) of the Rules Governing § 2255 Proceedings provides, however, that a § 2255 petitioner must demonstrate "good cause" in order to obtain discovery.  Further, a party requesting discovery must provide reasons for the request, any proposed interrogatories and requests for admission, and specify any requested documents.  Rule 6(b), Rules Governing § 2255 Proceedings.  Toyer does not specify any of the discovery he might perform or include any interrogatories or requests for admission, nor does he identify any documents he would request.  Accordingly, the court concludes that Toyer is not entitled to discovery.  *See United States v. Diggs*, 161 Fed. Appx. 7, 8 (D.C. Cir. 2005) (unpublished); *Stephens v. United States*, 14 F. Supp. 2d 1322, 1326 (N.D. Ga. 1998).  To the extent that Toyer is actually asking for an evidentiary hearing on this claim, such is likewise due to be denied.  *See Ramirez*, 608 F.2d at 1267 (recognizing that "the mere fact that the witness was subsequently allowed to plead to a lesser offense in and of itself is not sufficient to warrant a hearing" on whether a plea bargain with the witness existed prior to trial)

deceptively breached ... by the same agents he was cooperating with." (*Id.*)  As such, Toyer contends, "the defendant[']s counsel should have been the only party approached about the issuance and execution of the search warrant, because in all actuality the defendant was still entitled to be represented, and have the [a]ssistance of [c]ounsel." (*Id.*)

Any claim asserting the illegality of the police "ruse" employed to lure Toyer away from the 21st Street Residence when the search warrant was executed was not raised on direct appeal.  It is thus procedurally defaulted unless the default is excused. Toyer attempts to do so by invoking the "novelty" of his argument, along with its previously "non-existent legal predicate." (§ 2255 Brief at 22).  It is true that the fact that "a claim 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default." *Bousley*, 523 U.S. at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).

> .... In order to establish the novelty of a constitutional claim sufficient to provide cause, a defendant must initially demonstrate that his situation is one where a court has "articulated a constitutional principle that has not been previously recognized but which has been held to have retroactive application." [*Reed*, 468 U.S.] at 17, ....  A new retroactive decision must be a sufficiently "clear break with the past," so that an attorney representing the defendant would not reasonably have had the tools for presenting the claim in the state courts.  [*Id.* at 16-17].

*Howard v. United States*, 374 F.3d 1068, 1072 (11th Cir. 2004) (quoting *Hargrave*

*v. Dugger*, 832 F.2d 1528, 1530-31 (11th 1987)).

The court concludes that Toyer has failed to establish "cause" based upon the alleged novelty of his argument or otherwise.  In short, Toyer can cite no case from any court at any time espousing a constitutional principle, retroactive or not, supporting his theory that the police "ruse" violated his constitutional rights.  Indeed, even if he could somehow overcome his procedural default, his claim is due to be rejected on the merits.  To the extent that Toyer is objecting to the police's use of deception generally, his argument is invalid.  "The use of subterfuge in law enforcement activities has long been recognized by the Supreme Court."  *Storck v. City of Coral Springs*, 354 F.3d 1307, 1319 (11th Cir. 2003).  "'Artifice and stratagem may be employed to catch those engaged in criminal enterprises....  The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design ... [and] to disclose the would-be violators of the law.'"  *Lewis v. United States*, 385 U.S. 206, 208-209 n.5 (1966) (quoting *Sorrells v. United States*, 287 U.S. 435, 441-442 (1932)); *see also Illinois v. Perkins*, 496 U.S. 292 (1990) (statements made by defendant to undercover law enforcement officer posing as a fellow inmate were admissible even though *Miranda* warnings were not given); *Hoffa v. United States*, 385 U.S. 293 (1966) (testimony of government witness regarding incriminating statements made by defendant was

admissible notwithstanding that witness was acting as a secret informant for government, had gained the defendant's trust through deception, was under federal indictment himself).  The court perceives no basis whatsoever for concluding that the ruse itself violated the constitution or proximately resulted in Toyer making any of the incriminating statements admitted at trial.  The avowed purpose and effect of the "ruse" was to draw Toyer away from the 21st Street Residence to reduce the likelihood of violence in the execution of the search warrant, given Toyer's criminal history, which included manslaughter and assault convictions, and information held by police that there were numerous firearms on the premises.  Regardless of the method used to secure his presence, Toyer was advised of his *Miranda* rights, replied that he understood them, and then proceeded to make the incriminating statements. "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law."  *Moran v. Burbine*, 475 U.S. 412, 422-23 (1986); *see also id.* at 433 (failure of police to inform defendant of efforts of an attorney, who had been retained by the defendant's sister without his knowledge, to reach him did not deprive the defendant of his right to counsel or vitiate waiver of his *Miranda* rights).  Thus, Toyer's instant claim is

61

effectively defeated by the failure of his *Miranda* claim.

This conclusion is not undercut by Toyer's related argument that the "ruse" somehow violated his "continuing" right to counsel. Toyer alleges that he pled guilty to a prior state drug charge and was cooperating with the county drug task force as a condition of that plea. From this, Toyer suggests that his right to counsel stemming from that plea was ongoing such that he could not be "approached" by police directly in this case and that they could only go through his lawyer instead. (*See* § 2255 Brief at 21). Toyer's argument is frivolous. Even if a right to counsel has attached with regard to one pending charge, such does not insulate a defendant against police investigation or interrogation as to other, uncharged crimes, notwithstanding the absence of counsel. *See Moran*, 475 U.S. at 431; *Maine v. Moulton*, 474 U.S. 170, 179-80 (1985); *United States v. Terzado-Madruga*, 897 F.2d 1099, 1110-11 (11th Cir. 1990); *United States v. Nocella*, 849 F.2d 33, 35-39 (1st Cir. 1988). Here, the court thinks that it is doubtful that Toyer would still enjoy a right to counsel with regard to a criminal charge to which he had pled guilty and no further judicial proceedings were contemplated. Even so, the police were entitled to pursue an investigation and question Toyer about other criminal offenses. The police did not attempt to elicit or utilize any statements in furtherance of the prosecution or to modify a sentence related to the prior state drug charge. Rather, they were pursuing an investigation and

obtained incriminating statements regarding completely separate offenses, only after advising Toyer of his *Miranda* rights.  As such, the conduct of the police was lawful, and this claim is due to be denied.[17]

### D.  Sufficiency of the Evidence to Support the Ammunition Charge

Toyer asserts that the evidence was insufficient to support his conviction for possession of the ammunition in violation of 18 U.S.C. § 922(g)(1).  (§ 2255 Brief at 16-19).  This issue could have been but was not raised on direct appeal, so it is procedurally defaulted unless the default is excused.  *United States v. Montano*, 398 F.3d 1276, 1279-80 (11th Cir. 2005).  In order to overcome the procedural bar, a defendant must either show adequate cause for the default and actual prejudice suffered as a result or he must show that a refusal to consider the claim would constitute a "miscarriage of justice" because he is "actually innocent" of the offense for which he was convicted.  *Montano*, 398 F.3d at 1280; *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Toyer seeks to excuse the default of this claim, although the asserted ground is less than entirely clear.  While Toyer has lodged numerous complaints about his

---

[17]The only case Toyer cites in support of his continuing-right-to-counsel theory is *Rex v. United States*, 2006 WL 2327516 (S.D. Ga. Aug. 9, 2006) (unpublished).  (*See* § 2255 Brief at 22).  Toyer's reliance on *Rex* is misplaced.  There, the court held that the government had violated a defendant's right to counsel by having him sign waiver form authorizing a modification of his existing criminal sentence, without advice of counsel.  More specifically, the form provided that the defendant would agree to participate in a sex offender treatment program as a new condition of his release.  In Toyer's case, by contrast, nothing the police did resulted in the modification or alteration of a sentence.  Rather, the record shows that they were pursuing an investigation related to offenses that were completely unrelated to any offense to which Toyer had pled guilty.

counsel in his motion, nowhere has he raised the failure of his appellate counsel to raise this particular claim on direct appeal. Rather, it appears that Toyer is attempting to assert that his substantive underlying claim that the evidence was insufficient to support his conviction also establishes a "gateway"[18] claim of actual innocence.[19] Liberally construing Toyer's pro se motion, *see Aron* 291 F.3d at 715, the court will deem him to be asserting such a claim here.

To establish a gateway "miscarriage of justice" claim excusing a procedural default, a defendant "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Such is considered "a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541

---

[18]A "gateway" claim of "actual innocence" is to be distinguished from a "freestanding" actual innocence claim. The former pertains to a showing required to allow a court to reach the merits of otherwise procedurally defaulted underlying claims alleging that the defendant's trial was infected with error. The latter deals with a situation in which a defendant claims directly that he is entitled to post-conviction relief on the ground that he is actually innocent, *notwithstanding the absence of any error at trial*. *See House*, 547 U.S. at 536-37, 554-55; *Melson v. Allen*, 548 F.3d 993, 1001-02 & n.5 (11th Cir. 2008). The court does not understand Toyer to be making a freestanding claim of actual innocence. Even if he were, however, the court would not find he has made the required threshold showing to succeed on such a claim. *See House*, 547 U.S. at 554-55.

[19]Specifically, Toyer argues that, in order for his sufficiency-of-the evidence claim to be considered despite the default, his burden "is to show that 'the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" (§ 2255 Brief at 15-16 (quoting *Burke v. United States*, 152 1329, 1331 (11th Cir. 1991) (emphasis omitted)). The above-quoted language from *Burke*, however, does not actually delineate a standard used to determine whether to excuse of a procedural default. Rather, it is a standard for assessing whether a claim of error that is not founded upon the federal Constitution is cognizable in a § 2255 proceeding. *See Burke*, 152 F.3d at 1331. However, as noted above, courts do recognize a "miscarriage of justice" exception to the procedural default doctrine, based upon a claim of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 326, 327 (1995).

U.S. 386, 393 (2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  It is often said to be reserved for the "extraordinary case."  *House*, 547 U.S. at 538; *Schlup*, 513 U.S. at 327; *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court held that a conviction based upon insufficient evidence may violate due process so as to authorize post-conviction relief.  The threshold for a defendant to succeed on such a claim, however, is a high one; if, "after reviewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the conviction  is due to stand.  443 U.S. at 319 (emphasis original).  Although *Jackson* does not actually supply the standard for assessing a gateway claim of actual innocence, *see House*, 547 U.S. at 538-39; *Schlup*, 513 U.S. at 330, the court will assume here that a showing that the evidence supporting the ammunition count was so lacking as to violate due process would be enough, in conjunction with Toyer's trial testimony denying knowledge of the ammunition in the vehicle, also to establish a gateway actual innocence claim.[20]

---

[20]*Cf. Jackson*, 443 U.S. at 323 ("The question whether a defendant has been convicted upon inadequate evidence is central to the basic question of guilt or innocence."); *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (indicating that an actual innocence claim could be established by a defendant who had pled guilty by presenting evidence that his alleged conduct was not actually culpable under the relevant statute.  In at least one case, the Eleventh Circuit's analysis tended to suggest that a defendant who could meet the *Jackson* standard might also thereby establish a gateway actual innocence claim.  *See Peoples v. Campbell*, 377 F.3d 1208, 1230-31 (11th Cir. 2004); *see also Neville v. Dretke*, 423 F.3d 474, 481 (5th Cir. 2005); *Clemon v. Luebbers*, 381 F.3d 744, 754 & n. 6 (8th Cir. 2004); *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002); *but see Awon v. United States*, 308 F.3d 133, 143 (1st Cir. 2002) ("The assertion of actual innocence to excuse a procedural default does not permit a reviewing court to simply dive into defaulted questions of the sufficiency of evidence."); *United States v. Ratigan*, 351 F.3d 957, 965 (9th Cir. 2003) (holding that, even if the defendant might have been entitled to relief on direct appeal on the ground that the evidence was legally insufficient to sustain his conviction for robbing FDIC-insured bank because of a lack of evidence showing

The only element of the offense that Toyer challenges is whether the evidence

allowed a finding that he "knowingly" possessed the ammunition, as required under

18 U.S.C. § 922(g)(1).  *See United States v. Beckles*, 565 F.3d 832, 841 (11th Cir.

2009).  The Eleventh Circuit has explained:

> "The government need not prove actual possession in order to establish knowing possession; it need only show constructive possession through direct or circumstantial evidence."  *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006).  "Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control."  *Id.* However, "a defendant's mere presence in the area of [an object] or awareness of its location is not sufficient to establish possession." *United States v. Pedro*, 999 F.2d 497, 500-01 (11th Cir. 1993) (quotation marks omitted).

*Beckles*, 565 F.3d at 841.

Viewed in the light most favorable to the prosecution, the evidence showed the

following: (1) that agents recovered .380 ammunition and an empty box of .357

ammunition from the trunk of the automobile that Toyer drove alone to meet the

agents on the day that the search warrant was executed, November 18, 2005; (Trial

Vol. I at 24-28, 95); (2) that agents recovered a holster, a shotgun shell, and one

round of 9mm ammunition from the glove box on that same occasion (*id.* at 28-29);

(3) that Toyer possessed the .380 pistol and a .357 revolver recovered from the 21st

---

FDIC insurance at the time of the robbery, "actual innocence" exception did not apply where defendant offered no affirmative evidence that the bank was not so insured).

Street Residence; (4) those two weapons were themselves found loaded (*id.* at 67);

(5) that Toyer regularly drove the automobile he used to meet the agents on

November 18, 2005 (Trial Vol. I at 76); (6) that Toyer frequently carried the .357

revolver he was charged with possessing while driving that vehicle and that he had

fired the revolver on one occasion while driving it (*id.* at 75-77, 88-89); (6) that

agents had similarly found .357 ammunition and a shotgun shell in the automobile

when Toyer drove it to meet them to perform a controlled buy on August 16, 2005

(*id.* at 49-51, 91-92); and (7) that, when confronted on that occasion in August 2005

about the ammunition in the vehicle, Toyer made statements to the effect that he "had

to live on these streets" and "that he was going to take care of himself," indicating

that he was aware of the presence of the ammunition at that time. (Trial Vol. I at 49-

51, 91-92).   The court concludes that such evidence was sufficient to allow a

reasonable jury to find, beyond a reasonable doubt, that Toyer knowingly possessed

ammunition in violation of the statute. *See Beckles*, 565 F.3d at 841; *United States*

*v. Farris*, 77 F.3d 391, 395-96 (11th Cir. 1996); *United States v. Crawford*, 294

Fed.Appx. 466, 474-75 (11th Cir. Sept. 19, 2008) (unpublished).   Accordingly,

whether considered a gateway showing of actual innocence or a substantive

underlying due process claim, this claim is due to be rejected.

## III.  CONCLUSION

For the reasons state above the defendant's motion to vacate, set aside, or correct is due to be denied in its entirety and dismissed with prejudice.  An appropriate order denying this motion will be entered contemporaneously herewith.

**DONE**, this the 17th day of November, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge